# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SEAN SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:13-cv-01650-TWP-MJD |
| | ) | |
| UTAH VALLEY UNIVERSITY, | ) | |
| GREG SCHWAB, RYAN TANNER, | ) | |
| and DANIEL MCDONALD, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ON DEFENDANTS' SECOND MOTION TO DISMISS

This matter is before the Court on a Second Motion to Dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) by Defendants Utah Valley University ("UVU"); Greg Schwab ("Mr. Schwab"), UVU Chair of the Aviation Department; Ryan Tanner ("Mr. Tanner"), Director of Academic Support−Aviation Department and Daniel McDonald ("Mr. McDonald"), Chairman of the Academic Standards Committee (collectively "the Defendants") (Filing No. 27). Plaintiff Sean Smith ("Mr. Smith") was an online student at UVU during the Fall 2012, Spring 2013, and Summer 2013 terms. After receiving undeserved low grades and being dissatisfied with the administrative appeals process, Mr. Smith, *pro se*, filed this diversity action alleging breach of contract, Fourteenth Amendment Due Process violations, and discrimination, and he requested punitive damages. Defendants move to dismiss the Amended Complaint, which was filed in response to the Court's dismissal of claims in Mr. Smith's original complaint, without prejudice and with leave to re-file. For the following reasons, the Defendants' Second Motion to Dismiss is **GRANTED**.

## I.     LEGAL STANDARD

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008). However, the allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted). Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (internal citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Additionally, "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## II.     BACKGROUND

UVU is a state university located in Orem, Utah ([Filing No. 25 at 1](#)).UVU accepts Title IV funds as authorized by the Higher Education Act. Mr. Smith, a resident of Madison County, Indiana, enrolled in online classes in UVU's aviation department during the Fall 2012, Spring 2013, and Summer 2013 terms. When he first enrolled, Mr. Smith selected Mixed race Native American during his application process. During the course of his study, Mr. Smith noticed a large number of incorrect answers in UVU's test banks in two of his classes: AVSC-3090 and AVSC-3010. Mr. Smith began recording these errors and communicating his findings via email, to the

course instructors. The course instructors did not respond to Mr. Smith's emails. Because of the lack of response, on June 11, 2013, Mr. Smith appealed his course grades to Mr. Schwab, the chair of the aviation department. Mr. Schwab denied Mr. Smith's appeal. On June 21, 2013, Mr. Smith appealed Mr. Schwab's ruling to the UVU Academic Standards Committee, but the Registrar did not process Mr. Smith's appeal. When Mr. Smith submitted his appeal directly to Mr. McDonald, the chair of the Academic Standards Committee, Mr. McDonald refused to forward the appeal to the rest of the Academic Standards Committee.

Mr. Smith also took issue with the grades he received in courses AVSC-3030 and AVSC-410G. The final grade Mr. Smith received in AVSC-3030 was lower than he anticipated. Mr. Smith appealed the grade to Mr. Tanner, the Direct of Academic Support for the Aviation Department. With Mr. Tanner's assistance, Mr. Smith was able to convince the course instructor that the grade had been improperly computed, and Mr. Smith's grade for AVSC-3030 was raised accordingly.

Mr. Smith also was surprised by his low grade in AVSC-410G. After contacting Mr. Tanner and being directed to the course instructor, Mr. Smith learned that he had received a zero on his final paper. According to the course instructor, the score was the result of Mr. Smith's failure to comply with the requirements for the final assignment. Mr. Smith provided the instructor and Mr. Tanner with PDF metadata and a submission receipt which, he alleges, showed that he timely submitted a paper that complied with all the requirements. The instructor refused to re-grade Mr. Smith's paper, and Mr. Smith appealed to Mr. Schwab. Mr. Schwab denied Mr. Smith's appeal, telling him, "I am confident you were provided ample opportunity to accept a passing grade from the instructor had you agreed to his offerings or resubmitted the correct paper. Your continued steadfast refusal to cooperate with the faculty member is the only reason you were not able to experience a good outcome in this course." (Filing No. 25 at 8.) Mr. Smith appealed Mr. Schwab's

decision to the Academic Standards Committee. Mr. McDonald informed Mr. Smith that the Committee had denied his appeal, but after talking to Mr. Smith on the phone, Mr. McDonald decided to reconsider the appeal. Finally, on August 19, 2013, Mr. McDonald informed Mr. Smith that his appeal had been denied again. Although Mr. McDonald told Mr. Smith that the correct paper might have been submitted, he asserted that the instructor made a reasonable effort to grade the assignment, thus eliminating Mr. McDonald's ability to overrule the grade.

Having exhausted UVU's administrative appeals process, Mr. Smith decided to seek relief in this Court, filing his Complaint on October 16, 2013 ([Filing No. 1](#)). In his Complaint, Mr. Smith asserted claims of breach of contract, fraud, defamation, and discrimination. He requested compensatory and punitive damages. The Defendants moved to dismiss this action on December 10, 2013 ([Filing No. 16](#)). On June 27, 2014, the Court granted the Defendants' motion, dismissing with prejudice Mr. Smith's claims of fraud and defamation. The breach of contract, discrimination, and punitive damages claims were dismissed without prejudice, and Mr. Smith was permitted to amend his Complaint ([Filing No. 24](#)). He amended his Complaint on July 15, 2014, and the Defendants again moved to dismiss this action ([Filing No. 27](#)).

### III. DISCUSSION

Mr. Smith asserts five claims in his Amended Complaint. First, he alleges that the Defendants breached an implied contract by denying his appeal of his final grades in AVSC-3090 and AVSC-3010. Second, Mr. Smith alleges that the Defendants breached an implied contract by failing to process his appeal of his final grade in AVSC-410G in accordance with UVU's policies and procedures. Third, Mr. Smith alleges that his treatment deprived him of property rights guaranteed to him by the Fourteenth Amendment. Fourth, Mr. Smith alleges that his treatment deprived him of liberty guaranteed to him by the Fourteenth Amendment. Finally, Mr. Smith

4

alleges that the denial of his appeal of his grade in AVSC-410G stemmed from racial discrimination. Mr. Smith also requests punitive damages on the discrimination claim.

### A. Breach of Contract Claims

Mr. Smith's Amended Complaint alleges that UVU entered into an implied contract with him and that the handling of the administrative appeals process was a breach of that contract. But these contract claims are barred by the Eleventh Amendment.

The Eleventh Amendment ensures that States are immune from suits brought by their own citizens or citizens of other States in federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984). There are some exceptions to state sovereign immunity. In certain contexts, Congress can abrogate state immunity. *Dellmuth v. Muth*, 491 U.S. 223 (1989). Also, States can waive their immunity, but courts will "find waiver only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.'" *Edelman v. Jordan*, 415 U.S. 651, 673 (1974) (quoting *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171 (1909)). A State does not waive its federal immunity by consenting to suit in its own courts. *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 306 (1990). For a State to waive its federal immunity, it must specifically declare its intention to subject itself to suit in federal courts. *Id.*

Mr. Smith argues that Utah has statutorily waived immunity for contract claims. While Utah has waived immunity for contract claims, see Utah Code Ann. § 63G-7-301(1)(a), it has done so only in the state courts of Utah. Utah Code Ann. § 63G-7-501. Because Section 501 provides that Utah's "district courts have exclusive, original jurisdiction over any action brought under this chapter," Utah has explicitly refused to consent to federal court jurisdiction over contract claims.

*Id.*; *see also Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1235 (10th Cir. 1999) (finding that the statutory grant of exclusive jurisdiction to Utah state courts was a positive rejection of federal jurisdiction). Mr. Smith argues that *Sutton* is no longer good law because the statute has been amended and reordered since the decision. However, the relevant provision cited by *Sutton*, though it has changed places in the statute, has not changed in wording. Utah district courts still have "exclusive" jurisdiction over contract claims against the State. Utah Code Ann. § 63G-7-501.

Mr. Smith also argues that Utah Code Ann. § 63G-7-301(1)(b) eliminates the limitation of jurisdiction to state courts in Utah. Section 63G-7-301(1)(b) reads, "Actions arising out of contractual rights or obligations are not subject to the requirements of Sections 63G-7-401, 63G-7-402, 63G-7-403, or 63G-7-601." Because the language granting exclusive jurisdiction to Utah's state courts is found in § 63G-7-501, § 63G-7-301(1)(b) is inapplicable.

Although Utah has waived its immunity in contract suits in Utah state courts, it has not consented to jurisdiction for such suits in federal court. Mr. Smith's contract claims are barred by the Eleventh Amendment.

### B. Fourteenth Amendment Claims

Mr. Smith also alleges that his treatment by UVU violated the Fourteenth Amendment's protections of property and liberty. Mr. Smith's claims under the Fourteenth Amendment fail. First, the Eleventh Amendment creates a presumption that Utah is immune from suit. *Halderman*, 465 U.S. at 98. Utah has not waived its immunity from suit in this area of law. Although Mr. Smith's Complaint might be broadly construed as bringing an action pursuant to 42 U.S.C. § 1983, that statute does not abrogate the sovereign immunity of Utah. *Quern v. Jordan*, 440 U.S. 332, 345 (1979). A State is not a "person" that can be sued under the meaning of § 1983. *Will v. Michigan*

*Dep't of State Police*, 491 U.S. 58, 71 (1989). Likewise, state officials cannot be sued in their official capacity under § 1983. *Id.* This Court already has determined that the Defendants are arms of the State of Utah (Filing No. 24 at 4). Therefore, Mr. Smith's Fourteenth Amendment claims must be dismissed.

To the extent that Mr. Smith's Amended Complaint can be construed as suing Mr. Schwab, Mr. Tanner, and Mr. McDonald in their individual capacities, these Fourteenth Amendment claims are barred by qualified immunity. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011). Thus, qualified immunity bars Mr. Smith's Fourteenth Amendment claims unless his allegations establish the violation of a constitutional right that was "clearly established" at the time UVU officials denied his appeals. As explained below, the existing case law on property and liberty rights in the educational context does not clearly establish the existence of a right of the nature alleged by Mr. Smith.

  1. *Fourteenth Amendment Right to Property*

Some cases have assumed that a property right to continue enrollment in a university exists for due process purposes, *see, e.g., Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 223 (1985); *Waller v. S. Illinois Univ.*, 125 F.3d 541, 542 (7th Cir. 1997), and at least one case has held that students have a property right in their continued enrollment in a university, *Harris v. Blake*, 798 F.2d 419, 422 (10th Cir. 1986). But no court has found that students have a property interest in receiving a specific grade. To the contrary, courts have been extremely skeptical when reviewing claims by students alleging that their property interest in a certain grade has been denied.

7

In *Smith v. Davis*, the Fifth Circuit considered an action where the plaintiff sued because of a low grade he received for an improperly submitted paper. *Smith v. Davis*, 507 F. App'x 359, 360 (5th Cir. 2013). The plaintiff alleged that the low grade prevented him from being eligible to play football at the college that year. *Id.* After reviewing similar cases within the Fifth Circuit, the court explained that "a student who is not denied access to public education does not have a property or liberty interest implicated." *Id.* at 362. Ultimately, the court held that the asserted due process right had not been sufficiently established to defeat the defendant's claim to qualified immunity.

Similarly, in *Feine v. Parkland Coll. Bd. of Trustees*, the magistrate judge considered a claim by the plaintiff that a ten-point deduction in his grade for inappropriate and offensive comments violated a due process property right. *Feine v. Parkland Coll. Bd. of Trustees*, 2010 U.S. Dist. LEXIS 36913 (C.D. Ill. Feb. 25, 2010), *report and recommendation adopted*, 2010 U.S. Dist. LEXIS 36910 (C.D. Ill. Apr. 14, 2010). "After considering the case law regarding property interests in education and in the absence of any relevant authority to support the premise that a student has a property interest in a single assignment grade," the court determined that no property right was implicated. *Feine*, 2010 U.S. Dist. LEXIS 36913, at *23–24.

Here, the existence of a property right is dubious. Mr. Smith alleges that he received lower grades than he deserved, but he does not allege that those grades resulted in his dismissal or suspension from the school. There is jurisprudential support for the idea that a student who is denied the ability to continue their education has had a property right violated, but that did not occur here. Even assuming *arguendo* that the existence of a property right was established, the facts alleged by Mr. Smith do not establish a violation of such a property right.

Most cases involving due process violations in the academic context are situations where the student was dismissed from the school entirely. The Supreme Court has explained that procedural due process requirements must be flexible, especially when dealing with school suspensions or dismissals. *Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 86 (1978). More specifically, the Supreme Court has recognized that there is a lesser need for stringent procedural requirements when a student is dismissed for academic, instead of disciplinary, reasons. *Id.* "Like the decision of an individual professor as to the proper grade for a student in his course, the determination whether to dismiss a student for academic reasons requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decision-making." *Id.* at 90. In *Horowitz*, the Court refused to hold that due process had been violated when the student was dismissed for not meeting academic standards despite the school's failure to hold a hearing. *Id.*

Mr. Smith suffered a less significant consequence than the student in *Horowitz* and received greater procedural protection. Mr. Smith complains of merely receiving disappointingly low grades in three courses, not being suspended or dismissed from the school. Instead of being afforded no appeal process, Mr. Smith appealed his grades multiple times. At each level, he had the opportunity to state his grievance, receive a clear decision, and hear an explanation for that decision. The procedural benefits afforded to Mr. Smith were superior to those that were provided to the student in *Horowitz*. Mr. Smith's claim to a Fourteenth Amendment property right must be dismissed because there was no "clearly established" right to a better grade at the time of the challenged conduct.

### 2. Fourteenth Amendment Right to Liberty

Mr. Smith also alleges that his treatment violated the Fourteenth Amendment's protection of liberty. However, the Amended Complaint provides no indication of what liberty interest Mr. Smith alleges the Defendants violated. Rather, Mr. Smith's Amended Complaint only includes three sentences which cite two cases and quote two passages that have only limited relevance. These are conclusory, legal allegations, and the *Twombly* and *Iqbal* pleading standard requires far more.

Mr. Smith's Amended Complaint might be broadly construed as alleging a violation of substantive due process. "The touchstone of due process is protection of the individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). "An abuse of power is arbitrary if it 'shocks the conscience,' but the plaintiff must show that the official conduct is 'unjustifiable by any governmental interest.'" *Remer v. Burlington Area Sch. Dist.*, 286 F.3d 1007, 1013 (7th Cir. 2002) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).

"Although students may have some substantive due process rights while they are in school, . . . education itself is not a fundamental right." *Dunn v. Fairfield Cmty. High Sch. Dist. No. 225*, 158 F.3d 962, 966 (7th Cir. 1998). Consequently, any infringement on liberty interests that might result from receiving unfairly low grades falls even shorter of Fourteenth Amendment protection. Mr. Smith has failed to state a claim for a violation of his right to liberty protected by the Fourteenth Amendment.

Nothing in Mr. Smith's Amended Complaint approaches the level of arbitrary government conduct required to establish a violation of substantive due process. As already stated, the UVU officials afforded Mr. Smith multiple opportunities to state his grievances. Mr. McDonald refused to overrule the professor's grade in AVSC-410G because Mr. McDonald believed the professor

had made a reasonable effort to grade the paper. A presumption that the professor's judgment was correct is understandable: the professor is in the best position to grade students. The government conduct alleged here was reasonable and justifiable.

### C. Discrimination and Punitive Damages Claims

Finally, Mr. Smith alleges that his treatment by UVU and the other Defendants was discriminatory, and he requests punitive damages for the discrimination. The allegations in Mr. Smith's Amended Complaint fail to state a plausible claim for relief.

Mr. Smith alleges that he is a "Mixed Race Native American" and argues that his treatment violated the Fourteenth Amendment and Title VI of the Civil Rights Act of 1964 ([Filing No. 25 at 22](#)–23). However, allegations of discrimination under the Fourteenth Amendment or Title VI must include discriminatory intent. *Gomez v. Illinois State Bd. of Educ.*, 811 F.2d 1030, 1044 (7th Cir. 1987).

Mr. Smith alleges that he identified his race on his admissions application when applying to UVU. However, since Mr. Smith only took online classes, it does not appear that any of his instructors or other school officials ever interacted with Mr. Smith face-to-face nor had any other reason to know Mr. Smith's race. Mr. Smith fails to allege any reason why UVU officials might have known his race and intentionally discriminated against him because of his race. None of Mr. Smith's allegations indicate intentional discrimination on the part of UVU officials. Mr. Smith alleges that individuals from outside his protected class were allowed to turn in untimely assignments. However, Mr. Smith does not provide any details or examples of such preferential treatment, nor does he allege any facts supporting a discriminatory intent. Threadbare accusations do not satisfy the standard articulated in *Twombly* and *Iqbal*. Mr. Smith's claim for discrimination must be dismissed.

Because Mr. Smith's discrimination claim must be dismissed, and because his Amended Complaint requests punitive damages only on the discrimination claim, Mr. Smith's request for punitive damages must be dismissed also.

## IV. CONCLUSION

Having permitted Mr. Smith to plead his claims against Defendants twice, it appears that there are no set of facts under which he can prove that he is entitled to relief. Therefore, Defendants' Second Motion to Dismiss ([Filing No. 27](Filing No. 27)) is **GRANTED** and the Amended Complaint is DISMISSED with prejudice. Final judgment will issue under separate order.

**SO ORDERED.**

Date: 3/20/2015

*[signature]*

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Sean Smith
11 Flyntwood Drive
Anderson, IN 46012

Briana Lynn Clark
BINGHAM GREENEBAUM DOLL LLP
bclark@bgdlegal.com

James M. Hinshaw
BINGHAM GREENEBAUM DOLL LLP
jhinshaw@bgdlegal.com